UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x

ROBERT TROJAN,  :  Case No. 17-cv-1190 (LAP)
 :
                Plaintiff, :  **Oral Argument Requested**
 :
      v. :
 :
COMMERCIAL FINANCE ASSOCIATION, :
INC., ANDREA PETRO and :
WELLS FARGO & COMPANY, :
 :
              Defendants. :

------------------------------------------------x


# DEFENDANT WELLS FARGO & COMPANY'S MEMORANDUM
# OF LAW IN SUPPORT OF ITS MOTION TO DISMISS


Of Counsel:

Richard G. Haddad
Andrew S. Halpern


OTTERBOURG P.C.
230 Park Avenue
New York, New York 10169
Tel.: (212) 661-9100
Email: rhaddad@oshr.com

*Attorneys for Defendant Wells Fargo & Company*

## TABLE OF CONTENTS

        Page

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..............................................................................................................................1

    The Parties ..............................................................................................................................1

    Alleged Facts ..........................................................................................................................2

    Trojan's Claims Against Wells ..............................................................................................4

ARGUMENT ...................................................................................................................................5

    POINT I        TROJAN'S CLAIMS AGAINST WELLS
                      SHOULD BE DISMISSED BECAUSE
                      THE COMPLAINT FAILS TO ALLEGE
                      "SUFFICIENT FACTUAL MATTER" TO STATE
                      A CLAIM FOR RELIEF AGAINST WELLS
                      THAT IS "PLAUSIBLE ON ITS FACE." ..................................................5

    POINT II       TROJAN'S SECOND AND THIRD
                      CAUSES OF ACTION FAIL TO STATE
                      A CLAIM AGAINST WELLS FOR DEFAMATION ..............................7

    POINT III      TROJAN'S SIXTH CAUSE OF ACTION,
                      FOR "RETALIATION" UNDER NEW YORK
                      LABOR LAW § 215, FAILS TO STATE
                      A CLAIM AGAINST WELLS ...................................................................10

        A.           Trojan's Sixth Cause of Action Should Be Dismissed
                as to Wells Because the Complaint Fails to Plead
                "Plausible" Facts Alleging that Wells Took
                Any Retaliatory Action ..............................................................................10

        B.           Trojan's Sixth Cause of Action Should Be Dismissed
                as to Wells Because the Complaint Fails to Allege that
                Any Retaliation Was in Response to an Alleged Violation
                of the New York Labor Law .....................................................................11

CONCLUSION ..............................................................................................................................13

# TABLE OF AUTHORITIES

                                                                                                                                                  Page

*AK Tournament Play, Inc. v. Town of Wallkill*, 2011 WL 197216
    (S.D.N.Y. Jan. 19, 2011) .................................................................................5, 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................5, 6, 7, 8, 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................5, 6, 7, 9

*Castagna v. Luceno*, 2011 WL 1584593 (S.D.N.Y. Apr. 26, 2011) ......................................11

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)),
    *aff'd*, 444 Fed. Appx. 475 (2d Cir. Oct. 28, 2011) ...........................................5, 6

*Chandok v. Klessig*, 632 F.3d 803 (2d Cir. 2011) ..............................................................7, 9

*Day v. Summit Security Services Inc.*, 53 Misc. 3d 1057, 38 N.Y.S.3d 390
    (Sup. Ct. N.Y. Co. 2016) ......................................................................................10

*Elastic Wonder, Inc. v. Posey*, 179 F. Supp. 3d 307 (S.D.N.Y. 2016) ...................................8

*Enigma Software Group USA, LLC v. Bleeping Computer LLC*,
    194 F. Supp. 3d 263 (S.D.N.Y. July 8, 2016) ..........................................................7

*Epifani v. Johnson*, 65 A.D.3d 224, 882 N.Y.S.2d 234 (2d Dep't 2009) ........................ 11-12

*Figueroa v. Tri-City Highway Products, Inc.*, 2010 WL 3635247
    (N.D.N.Y. Sept. 10, 2010) .....................................................................................12

*Gauvin v. Trombatore*, 682 Scup. 1067 (N.D. Cal. 1988) .....................................................6

*Hai Ming Lu v. Jing Fong Restaurant, Inc.*, 503 F. Supp. 2d 706
    (S.D.N.Y. 2007) ....................................................................................................12

*Higueros v. New York State Catholic Health Plan, Inc.*,
    526 F. Supp. 2d 342 (E.D.N.Y. 2007) .............................................................10, 12

*Kelly v. Xerox Corp.*, 256 A.D.2d 311, 312, 681 N.Y.S.2d 322
    (2d Dep't 1998) ......................................................................................................12

*Lunney v. Prodigy Services Co.*, 250 A.D.2d 230, 683 N.Y.S.2d 557
    (1st Dep't 1998), *aff'd*, 94 N.Y.2d 242, 701 N.Y.S.2d 684 (1999),
    *cert. denied*, 529 U.S. 1098 (2000) .........................................................................7

*Ma'at El v. City of New York*, 2008 WL 2517138 (E.D.N.Y. June 20, 2008) .......................6

*Memory's Garden, Inc. v. D'Amico*, 84 A.D.2d 892, 445 N.Y.S.2d 45
    (3d Dep't 1981) ........................................................................................................7

*Mercator Corp. v. Sapinda Holding B.V.*, 2016 WL 6683505
    (S.D.N.Y. Nov. 14, 2016)..................................................................................................8

*Mottola v. Denegre*, 2012 WL 12883775 (S.D.N.Y. June 8, 2012),
    *aff'd*, 518 Fed. Appx. 22 (2d Cir. May 1, 2013)...........................................................7

*Rafferty v. Halprin*, 1991 WL 148798 (S.D.N.Y. July 26, 1991)......................................6

*Yost v. Nationstar Mortg.*, LLC, 2013 WL 4828590 (E.D. Ca. Sept. 9, 2013) ................6

*Zena Associates, LLC v. Abrams*, 2011 WL 1086011 (E.D. Pa. Mar. 18, 2011) ............8

<u>Statutes, Rules and Legislative History</u>

Fed. R. Civ. P. 8(a)(2)........................................................................................................6

Fed. R. Civ. P. 9................................................................................................................6

N.Y. Labor Law § 215 ............................................................................................. *passim*

N.Y. R. Civ. P. 12(b)(6)....................................................................................................5

Wage Theft Prevention Act, New York Bill Jacket, Laws of 2010, Ch. 564,
    S.B. 8380 ........................................................................................................................12

Defendant Wells Fargo & Company ("Wells") submits this Memorandum of Law in support of its Motion to Dismiss (the "Motion") the claims asserted against it in the Complaint in this action (the "Complaint").

## PRELIMINARY STATEMENT

Plaintiff Robert Trojan ("Trojan") asserts claims against Wells for defamation and for "retaliation" under New York Labor Law § 215. Those claims are frivolous. Trojan cannot state a claim against Wells for defamation because the Complaint establishes that Wells did not make or publish any statement. Trojan cannot state a claim against Wells for retaliation under New York Labor Law § 215 because the Complaint confirms that Wells did not (and could not) take any retaliatory action and that Trojan did not complain about an alleged violation of any provision of the Labor Law, which is the mandatory prerequisite to a Section 215 claim. Accordingly, Trojan's claims against Wells fail and should be dismissed with prejudice.

## BACKGROUND[1]

### The Parties

This action arises out of the termination of Trojan's employment as Chief Executive Officer ("CEO") of defendant the Commercial Finance Association, Inc. (the "CFA") and the CFA Educational Foundation (the "Foundation"). The CFA is an international trade association for commercial lenders with approximately 240 member companies. (Compl. ¶ 13) Wells is a Delaware banking and financial services holding company. (Compl. ¶ 8) Defendant Andrea Petro ("Petro") is an Executive Vice President and Division Manager of the Lender Finance

---

[1] For purposes of the Motion, Wells assumes (but does not admit) that the non-conclusory, factual allegations in the Complaint are true.

division of Wells' "Wells Fargo Capital Finance"[2] business (Compl. ¶ 7) and serves in a voluntary capacity as the President of the CFA. As explained in the Complaint, Petro acted only on behalf of the CFA, not Wells, and Wells did not have any involvement in the events described in the Complaint. Accordingly, Trojan's claims against Wells cannot stand.

**Alleged Facts**

On January 20, 2017, Petro, in her role as President of the CFA, advised Trojan that his employment with the CFA and the Foundation was terminated. (Compl. ¶ 42) Trojan claims that his termination by the CFA was in retaliation for a written complaint made by Trojan the day before to Petro and the Chair and Members of the CFA Finance and Audit Committee about an alleged lack of auditor independence and undisclosed related party transactions. (Compl. ¶¶ 41, 55, 56)

On the morning of January 23, 2017, Trojan, through counsel, "wrote [a letter to] Petro and the CFA to demand the wages and severance owed him for a non-Cause termination pursuant to his employment contract" with the CFA (the "Letter," Ex. "A" to the Declaration of Richard G. Haddad (the "Haddad Decl.") at 2-3). (Compl. §§ 2, 59) The Complaint alleges that, in "retaliation" for the Letter, Petro, in her role as President of the CFA and from a CFA e-mail account, sent two virtually identical e-mails on January 23 and 24, 2017 (Compl. Ex. "1" at 3 & Ex. "2," collectively, the "E-mails," and, respectively, the "January 23 E-mail" and the "January 24 E-mail") to the directors and members of the CFA and the Foundation and others, which were allegedly defamatory because they did not accurately describe the circumstances of Trojan's termination. (Compl. ¶¶ 60-72, 92, 96, 98)

---

[2] The named defendant in this action is Wells Fargo & Company, a Delaware bank holding company. Petro is an officer of Wells Fargo Bank, N.A., a separate and distinct legal entity, and she is not employed by the named defendant. Nonetheless, even if the Trojan's claims were asserted against Petro's actual employer, the claims would fail as a matter of law for the exact same reasons as set forth herein.

2

The January 23 E-mail (Compl. Ex. "2" at 3) reads, in its entirety, as follows:

**From**: Andrea Petro <mocejo@cfa.com>
**Date**: January 23, 2017 at 12:25:42 PM EST
**Subject: Bob Trojan Departure from CFA**

My Fellow Directors and CFA Education Foundation Members:

I wish to advise you that on Friday, January 20th the Executive Committee voted unanimously to immediately terminate the employment of Bob Trojan as CFA's CEO. The decision was not made lightly and reflects, in part, the financial underperformance of the CFA. The Executive Committee has hired Richard Gumbrecht as our interim manager and you can view his resume here. The formation of a Search Committee is underway to identify a new CEO and I will keep you informed of our progress. While Bob's departure will create a temporary distraction, we believe the decision was unavoidable and in the long term best interest of the Association.

If you have any questions, please email me at andrea.petro@wellsfargo.com or call me at 972-361-7219 or contact one of the members of the Management Committee.

Sincerely,
Andrea Petro
President
Commercial Finance Association

The January 24 E-mail is identical to the January 23 E-mail, except that the January 24 E-mail refers to Richard Gumbrecht as "interim CEO" rather than "interim manager" and the January 24 E-mail was allegedly sent on a different date to a "wider audience." (Compl. Ex. "2" at 3 & Ex. "3"; Compl. ¶ 151)

Although the Complaint repeatedly alleges, in conclusory fashion, that "Defendants" (apparently encompassing Petro, CFA and Wells) "sent" or "published" the E-mails (Compl. ¶¶ 2, 89, 93, 94, 95, 96, 148, 151, 152), it is plain from a review of the E-mails that Petro sent them exclusively in her capacity as president of the CFA, not on behalf of Wells, for the following reasons:

3

- Petro caused the E-mails to be sent from an *e-mail address* of the CFA, not her e-mail address at Wells (Compl. Ex. "2" at 3 & Ex. "3");

- Petro specifically confirmed in the *signature block* of the E-mails that she was issuing them as "President" of the CFA, not on behalf of Wells (*id.*);

- the E-mails addressed the *termination of the CEO of the CFA*, the hiring of an interim CEO, and the CFA's search for a permanent replacement for Trojan (*id.*); and

- the E-mails were *sent to the directors and members of the CFA* and the Foundation, not to business associates of Wells (*id.*; Compl. ¶ 2).

**Trojan's Claims Against Wells**

The Complaint asserts three claims against Wells. The Second and Third Causes of Action, entitled "Defamation – Libel and Slander *Per Se*" and "Defamation by Implication – Libel *Per Se*," lump together all of the Defendants and allege, in conclusory fashion, that "Defendants published" or "caused to be published" the E-mails, which were "defamatory,"[3] resulting in damages to Trojan. (Compl. ¶¶ 87-117)

The Sixth Cause of Action, entitled "Violation of New York Labor Law § 215 – Retaliation," asserts a claim against all of the Defendants lumped together, alleging that "Defendants terminated Trojan without Cause and for whistleblowing" and "Defendants" "retaliated" against Trojan for "demanding payment of wages and severance given his non-Cause termination" by sending the E-mails. (Compl. ¶¶ 1, 2, 138-55) There is no allegation specifically directed against Wells, and the Complaint confirms that Trojan and Wells had no

---

[3] Having read the statements, they appear on their face to be non-defamatory and Wells reserves all rights and defenses in this regard.

4

relationship and no connection, that Wells did not employ or terminate Trojan, and that Wells had no duty to pay wages and severance to Trojan in any event.

As demonstrated below, none of these causes of action states a claim against Wells.

## ARGUMENT

### POINT I

### TROJAN'S CLAIMS AGAINST WELLS SHOULD BE DISMISSED BECAUSE THE COMPLAINT FAILS TO ALLEGE "SUFFICIENT FACTUAL MATTER" TO STATE A CLAIM FOR RELIEF AGAINST WELLS THAT IS "PLAUSIBLE ON ITS FACE."

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and "'naked assertion[s]' devoid of 'further factual enhancement'" will not "suffice." *Iqbal*, 556 U.S. at 678 (alteration in original) (citing *Twombly*, 550 U.S. at 555, 557). A plaintiff's factual allegations must demonstrate "more than a sheer possibility that a defendant has acted unlawfully" and that the plaintiff's claim is more than merely "'conceivable.'" *Iqbal*, 556 U.S. at 678, 680 (quoting *Twombly*, 550 U.S. at 570).

"In evaluating the plaintiff's claims, a district court must accept the factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *AK Tournament Play, Inc. v. Town of Wallkill*, 2011 WL 197216, at *2 (S.D.N.Y. Jan. 19, 2011) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)), *aff'd*, 444 Fed. Appx. 475 (2d Cir. Oct. 28, 2011). However, the Court is not required "to accept as true a legal

5

conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In addition to the Complaint, the Court may consider the exhibits to the Complaint and any documents incorporated by reference in the complaint. *AK Tournament Play, Inc.*, 2011 WL 197216, at *2 (citing *Chambers*, 282 F.3d at 152-53).

Where a plaintiff sues multiple defendants, the plaintiff must "set[] forth ... the legal basis and factual allegations to support his claims against each defendant." *Ma'at El v. City of New York*, 2008 WL 2517138, at *1 (E.D.N.Y. June 20, 2008). *See also Yost v. Nationstar Mortg., LLC*, 2013 WL 4828590, at *3 (E.D. Ca. Sept. 9, 2013) ("A plaintiff suing multiple defendants 'must allege the basis of his claim against *each* defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them.'... Under the pleading standard of either Rule 8 or Rule 9, Plaintiffs must distinguish Defendants' particular roles in the alleged causes of action.") (emphasis in original) (quoting *Gauvin v. Trombatore*, 682 Scup. 1067, 1071 (N.D. Cal. 1988)). Consequently, a "claim for defamation against all defendants, lumped together,... [may] fail to satisfy even the lenient notice pleading requirements of Rule 8(a)." *Rafferty v. Halprin*, 1991 WL 148798, *8 (S.D.N.Y. July 26, 1991). *See also Yost*, 2013 WL 4828590, at *2-3 ("Neither Rule 8 nor Rule 9 allows lumping together multiple Defendants.").

As demonstrated below, the Complaint fails to allege a "plausible" claim against Wells because the Complaint and the documents attached to and referred to in it demonstrate that (i) Wells was not Trojan's employer and did not have any role in his termination, (ii) Petro sent the E-mails from a CFA e-mail account expressly on behalf of the CFA, not Wells, and (iii) any "retaliation" claim under New York Labor Law § 215 fails because there is no alleged underlying violation of any provision of the New York Labor Law.

## POINT II

### TROJAN'S SECOND AND THIRD CAUSES OF ACTION FAIL TO STATE A CLAIM AGAINST WELLS FOR DEFAMATION.

The standards set forth in *Iqbal* and *Twombly* apply to defamation claims. *Mottola v. Denegre*, 2012 WL 12883775, at *2 (S.D.N.Y. June 8, 2012), *aff'd*, 518 Fed. Appx. 22 (2d Cir. May 1, 2013). "New York law allows a plaintiff to recover for defamation by proving that the **defendant published** to a third party **a defamatory statement** of fact that was false, was made with the applicable level of fault, and either was defamatory *per se* or caused the plaintiff special harm...." *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011) (emphasis added) (citation omitted). In other words, "[t]o state a claim for defamation under New York law, a plaintiff must allege that the defendant **made a statement** that was: (1) false, defamatory, and of and concerning the plaintiff; (2) published to a third party; (3) made with the applicable level of fault; and (4) defamatory *per se* or caused the plaintiff special harm." *Enigma Software Group USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 280-81 (S.D.N.Y. July 8, 2016) (emphasis added) (citations omitted).

Consequently, a defendant that did not publish or make a defamatory statement is not liable for defamation. *Lunney v. Prodigy Services Co.*, 250 A.D.2d 230, 233, 683 N.Y.S.2d 557, 560 (1st Dep't 1998) (defendant that "did not publish the statement" could not be liable for defamation), *aff'd*, 94 N.Y.2d 242, 701 N.Y.S.2d 684 (1999), *cert. denied*, 529 U.S. 1098 (2000); *Memory's Garden, Inc. v. D'Amico*, 84 A.D.2d 892, 892, 445 N.Y.S.2d 45 (3d Dep't 1981) ("As she did not publish the allegedly scandalous statements, she is not chargeable with libel.").

Although the Complaint repeatedly alleges, in lumped and conclusory fashion, that "Defendants" (Petro, CFA and Wells) "sent" or "published" the E-mails (Compl. ¶¶ 2, 89, 93, 94, 95, 96, 148, 151, 152), it fails to plead "factual content that allows the court to draw the

7

reasonable inference," *Iqbal*, 556 U.S. at 678, that Wells "published" or "made" a defamatory statement. Indeed, the E-mails show that Petro sent them as "President" of the CFA, not on behalf of Wells, because:

- Petro caused the E-mails to be sent from an e-mail address showing that they came from the CFA, not from her e-mail address at Wells (Compl. Ex. "2" at 3 & Ex. "3");

- Petro specifically confirmed in the signature block of the E-mails that she was issuing them as "President" of the CFA, not on behalf of Wells (*id.*);

- the E-mails addressed the termination of the CEO of the CFA, not an employee of Wells, and therefore obviously related to the CFA's, not Wells', business (*id.*); and

- the E-mails were sent to the directors and members of the CFA and the Foundation, not to persons or entities doing business with Wells (*id.*; Compl. ¶ 2).

*See Mercator Corp. v. Sapinda Holding B.V.*, 2016 WL 6683505, at *6 (S.D.N.Y. Nov. 14, 2016) ("The plain language of the signature block refutes any suggestion that Windhorst signed on behalf of Sapinda Holding."); *Elastic Wonder, Inc. v. Posey*, 179 F. Supp. 3d 307, 315 (S.D.N.Y. 2016) ("A consumer receiving an email with that signature block would easily conclude that the source of the goods bearing the ELASTIC WONDER mark sold on the website was Elastic Wonder."); *Zena Associates, LLC v. Abrams*, 2011 WL 1086011, at *5 (E.D. Pa. Mar. 18, 2011) ("Exhibit three submitted in support of Plaintiff's response to the instant motion demonstrates that Abrams sent emails on behalf of Speema in his capacity as International Sales Director, as noted in the signature block of the email.").

Trojan attempts to support his conclusory allegations that "Defendants" (including Wells) "sent" and "published" the E-mails by alleging that, "[u]pon information and belief, Petro from her office at Wells Fargo directed the CFA Editor-in-Chief to email the defamatory January 23

8

Email." (Compl. ¶ 62) However, even assuming that a recipient of the E-mails could have known where Petro was physically located when she allegedly sent the E-mails, the fact that Petro went to the trouble of "direct[ing] the CFA Editor-in-Chief" to send the E-mails from an e-mail account of the CFA, rather than sending them from her own e-mail account at Wells, shows how careful she was to make clear (and how logical it is) that she was speaking for the CFA, not Wells, in the E-mails.

Trojan's assertion that "Petro invited the recipients to contact her at her Wells Fargo email address and telephone number" (Compl. ¶ 62) also fails to support Trojan's conclusory allegations that Wells "sent" and "published" the E-mails. Because any recipient of the E-mails would have seen that they were sent from an e-mail account of the CFA, were signed by Petro as "President" of the CFA, involved the termination of the CFA's (not Wells') CEO, described the CFA's plan for transition to a new permanent CEO, and were sent to the CFA's and the Foundation's (not Wells') directors and members, it is obvious that the only purpose of providing her email address and telephone number at Wells was to make it easier for recipients of the E-mails to reach her if a recipient had a question. In fact, Trojan's attorney addressed the Letter to Petro as "President" of the CFA, but e-mailed the Letter – which made no reference to any involvement of Wells in Trojan's termination – to Petro at her e-mail address at Wells. (Haddad Decl. Ex. "A" at 2-3)

Since the Complaint refutes Trojan's conclusory allegations that Wells "sent" and "published" the E-mails, the Complaint fails to state a claim for defamation against Wells that is "'plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *Chandok*, 632 F.3d at 814. Accordingly, Trojan's defamation claims against Wells should be dismissed.

## POINT III

## TROJAN'S SIXTH CAUSE OF ACTION, FOR "RETALIATION" UNDER NEW YORK LABOR LAW § 215, FAILS TO STATE A CLAIM AGAINST WELLS.

In the Sixth Cause of Action, Trojan asserts a lumped claim against the CFA, Petro and Wells for "Retaliation" under N.Y. Labor Law § 215, alleging that "Defendants terminated Trojan [as CEO of the CFA and the Foundation] without Cause and for whistleblowing" and "Defendants" "sent" the E-mails in retaliation for "demanding payment of wages and severance given his non-Cause termination" under his employment agreement. (Compl. ¶¶ 1, 2, 138-55) This cause of action fails to state a claim against Wells because: (1) the Complaint fails to allege any facts indicating that Wells employed Trojan, terminated Trojan, or took any retaliatory action against Trojan, and (2) the Complaint specifically alleges that the alleged "retaliation" occurred in response to complaints by Trojan about matters that could not have been violations of any provision of the New York Labor Law, which is a prerequisite to a Section 215 claim.

A.  Trojan's Sixth Cause of Action Should Be Dismissed as to Wells Because the Complaint Fails to Plead "Plausible" Facts Alleging that Wells Took Any Retaliatory Action.

In order to "retaliate," as referred to in New York Labor Law § 215, a party must take some action that is retaliatory. *E.g.*, *Day v. Summit Security Services Inc.*, 53 Misc. 3d 1057, 1063, 38 N.Y.S.3d 390, 395 (Sup. Ct. N.Y. Co. 2016) ("On its face, the statute [Section 215(1)(a)] is concerned with the *actions* of employers and those acting on the behalf of the employer (*i.e.*, agents and officers) for the improper conduct by the same employer.") (emphasis added); *Higueros v. New York State Catholic Health Plan, Inc.*, 526 F. Supp. 2d 342, 347 (E.D.N.Y. 2007) (to state a claim under Section 215, a plaintiff must allege "a nexus between the employee's complaint and the employer's [or other person's] *retaliatory action*") (emphasis added). The Complaint does not allege any facts indicating that Wells had any role in Trojan's termination and demonstrates that Petro "sent" or "published" the E-mails on behalf of the CFA,

10

not Wells. Accordingly, the Complaint fails to allege that Wells took any retaliatory action, and it does not state a claim against Wells for retaliation under New York Labor Law § 215(a).

B. **Trojan's Sixth Cause of Action Should Be Dismissed as to Wells Because the Complaint Fails to Allege that Any Retaliation Was in Response to an Alleged Violation of the New York Labor Law.**

Section 215(1)(a) provides, in pertinent part:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes *violates any provision of this chapter*, or any order issued by the commissioner (ii) because such employer or person believes that such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general, or to any other person that the employer has *violated any provision of this chapter*, or any order issued by the commissioner …, or (vi) because such employee has otherwise exercised *rights protected under this chapter* ….

N.Y. Lab. Law § 215(1)(a) (2017) (emphasis added).

The plain language of New York Labor Law § 215(1)(a) and numerous decisions construing the statute confirm that the words "this chapter" refer *only to* violations of the New York Labor Law, and not to violations of other statutes or obligations. *E.g., Castagna v. Luceno*, 2011 WL 1584593, at *12 (S.D.N.Y. Apr. 26, 2011) ("Section 215(1)(a) prohibits employers from … retaliating against any employee 'because such employee has made a complaint to his or her employer … that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter,' N.Y. Lab. Law § 215(1)(a)(i) – *that is, because the employee has made a complaint about violations of any other statutory section of the state labor law*"… A plaintiff must show that she '*complained about a specific violation of the Labor Law*.' ….") (citations omitted) (emphasis added), *aff'd*, 744 F.3d 254 (2d Cir. 2014); *Epifani v. Johnson*, 65 A.D.3d 224, 236, 882 N.Y.S.2d 234, 244 (2d Dep't

11

2009) ("We nonetheless hold that a plaintiff must allege that he or she **complained about a specific violation of the Labor Law** to support a claim of retaliatory discharge pursuant to Labor Law § 215….Since, as previously stated, **the term 'this chapter,' as used in Labor Law § 215, 'refers to any provision of the Labor Law'** …, so much of the sixth cause of action as is premised upon complaints pertaining to Johnson's failure to pay Oliverre for overtime cannot support a cause of action pursuant to Labor Law § 215.") (emphasis added) (quoting *Kelly v. Xerox Corp.*, 256 A.D.2d 311, 312, 681 N.Y.S.2d 322, 323 (2d Dep't 1998)); *Figueroa v. Tri-City Highway Products, Inc.*, 2010 WL 3635247, at *5 (N.D.N.Y. Sept. 10, 2010) ("To state a retaliation claim under New York Labor Law § 215, 'a plaintiff must adequately plead that **while employed by the defendant**, he or she made a complaint about **the employer's violation of New York Labor Law** and was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result.'") (emphasis added) (quoting *Higueros*, 526 F. Supp. 2d at 347); *Hai Ming Lu v. Jing Fong Restaurant, Inc.*, 503 F. Supp. 2d 706, 712 (S.D.N.Y. 2007) ("To satisfy this claim, the evidence must show, at a minimum, that the actions here complained of '**constitute an adverse employment action taken because of [the] complaints under the Labor Law**.'") (citations omitted) (emphasis added).

Further, as set forth in the bill jacket, the Legislature stated that Section 215(1)(a), as amended in 2010 by the "Wage Theft Prevention Act," "protects an employee from **retaliation where the employee makes a complaint about conduct that the employee reasonably and in good faith believes constitutes a violation under the Labor Law**." New York Bill Jacket, Laws of 2010, Ch. 564, S.B. 8380, at 7 § 10, Haddad Decl. Ex. "B" (emphasis added).

Thus, to state a claim against Wells under Section 215, Trojan must allege that:
- he "made a complaint" that the CFA "engaged in conduct that [he], reasonably and in good faith, believe[d] violate[d]" a provision of the New York Labor Law;

- Wells "believe[d] that [Trojan] made a complaint to [the CFA, Petro or Wells] … that [the CFA] ha[d] violated" a provision of the New York Labor Law; or

- Wells retaliated against Trojan because he "otherwise exercised rights protected under" the New York Labor Law.

The Complaint establishes that none of these alternatives is satisfied. Trojan alleges that "Defendants" "retaliated" against him because (i) he complained about a "lack of auditor independence and undisclosed related party transactions," and (ii) he "wrote Petro and the CFA to demand the wages and severance owed him for a non-Cause termination pursuant to his employment contract." (Compl. ¶¶ 2, 41, 59, 143, 147, 153, 155) Neither of these complaints raised an actual, alleged or conceivable violation of any provision of the New York Labor Law, and Trojan's alleged right to make these complaints was not "protected under" any provision of the Labor Law. Further, Trojan does not even attempt to plead that he or Wells believed that his complaints were about a violation of the Labor Law. Accordingly, the Complaint fails to state a claim against Wells for violation of New York Labor Law § 215.

## CONCLUSION

For the reasons set forth above, the Complaint fails to state a claim against Wells. Accordingly, all of Trojan's claims against Wells should be dismissed with prejudice.

Dated: New York, New York
April 5, 2017

OTTERBOURG P.C.

By: /s/ Richard G. Haddad
Richard G. Haddad
A Member of the Firm
rhaddad@otterbourg.com
Andrew S. Halpern
ahalpern@otterbourg.com
230 Park Avenue
New York, New York 10169
(212) 661-9100
*Attorneys for Defendant Wells Fargo & Company*

4723566.1

13